IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CECILIA SCHWABER TRUST TWO, et al. | * * * | |
| v. | * * | Civil No. JFM-06-956 |
| HARTFORD ACCIDENT AND INDEMNITY, CO., et al. | * * | |
| | ***** | |

MEMORANDUM

This action arises out of a dispute about insurance coverage. Plaintiffs Cecilia Schwaber Trust Two, Schwaber Management, Inc., and H.C. Walterhoefer, Inc. seek a declaratory judgment that The Hartford Accident & Indemnity Co. and five of its affiliates must reimburse Plaintiffs for damage to a commercial property. Plaintiffs also seek damages for breach of contract, under Maryland law, and violation of Pennsylvania and Indiana laws prohibiting insurer bad faith. Defendants move to dismiss the Pennsylvania and Indiana claims and to dismiss certain parties from the action.[1] For the reasons stated below, the motion is granted.

I.

Plaintiffs filed this case in the Circuit Court for Baltimore City on March 29, 2006 against The Hartford Accident & Indemnity Co. ("Hartford") and five of its affiliates: The Hartford Insurance Group, Hartford Insurance Co. of the Midwest, Hartford Casualty Insurance Co., Hartford Fire Insurance Co., and Hartford Financial Services Group, Inc. The case was

---

[1] The standard to be applied in ruling upon a motion to dismiss is well established. A court must accept as true all well-pleaded allegations of the complaint and must construe the factual allegations in the light most favorable to the plaintiff. *Hall v. Virginia*, 385 F.3d 421, 427 (4th Cir. 2004). Ultimately, a complaint should not be dismissed under Rule 12(b)(6) unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. *Id.*

removed to this court on diversity grounds on April 13.  Plaintiffs are all residents of Maryland and Defendants all reside in Connecticut.

The allegations of the complaint are as follows.  The Hartford Accident & Indemnity Co. ("Hartford") issued an insurance policy to Schwaber Management, Inc., Policy No. 30 UUN IF8459 (hereinafter "the policy") with effective dates of March 1, 2002 through March 1, 2003.  The policy extended coverage for a property located at 2331-2339 Washington Blvd. in Baltimore, and it included an endorsement form adding additional insureds, including Cecilia Schwaber Trust Two (the "Trust").  On or about February 16, 2003, a blizzard resulted in the accumulation of snow and ice on the roof of the warehouse located at 2331-2335 Washington Blvd.  At that time, the warehouse was owned by the Trust, managed by Schwaber Management, and occupied by tenant H.C. Walterhoefer, Inc. ("Walterhoefer").  Walterhoefer is not a named insured under the Policy but held an option to buy the property at the time of the storm and currently owns the property.  In late March 2003, Walterhoefer discovered leaks in the roof.  Further investigation revealed damage to the roof and supporting structures caused by the blizzard, which necessitated replacement of the entire roof.  Plaintiffs filed a claim with Hartford on June 6, 2003 for damages and losses caused by the storm.  Hartford denied the claim and refused to pay Plaintiffs, who suffered a total loss in excess of $792,110.53.  More specifically, employees of Hartford or one of its affiliates at an office in Pennsylvania initially denied the claim, before the matter was transferred to an Indiana office, which revisited the issue and authorized payment to Plaintiffs of only five percent of the actual loss sustained due to the blizzard.

The complaint contains four counts.  Count One alleges breach of contract under

Maryland law. Count Two seeks a declaratory judgment under Maryland law that Defendants are obligated by the insurance policy to reimburse Plaintiffs for $792,110.53 in damages to the roof. Count Three alleges insurer bad faith under Pennsylvania law and seeks compensatory damages plus punitive damages of at least $5 million. Count Four alleges insurer bad faith under Indiana law and seeks compensatory damages plus punitive damages of at least $5 million. On April 20, 2006, Defendants filed a motion to dismiss the Pennsylvania and Indiana claims and to dismiss Walterhoefer as a plaintiff and the five Hartford affiliates as defendants.

II.

Count Three of the complaint is based on a Pennsylvania statute that provides a cause of action for bad faith failure to pay an insurance claim.[2] *See* 42 PA. CONS. STAT. ANN. § 8371; *Eastern Stainless Corp. v. Am. Prot. Ins. Co.*, 829 F. Supp. 797, 801 (D. Md. 1993). The statute reads:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. ANN. § 8371. Count Four is based on Indiana common law. In 1993, the Indiana Supreme Court created a cause of action in tort for breach of an insurer's duty to deal in good faith with its insured. *See Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993).

It is rather clear plaintiffs bring the Pennsylvania and Indiana claims in an attempt to

---

[2] There is no action for bad faith failure to pay an insurance claim under Pennsylvania common law. *D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 431 A.2d 966, 970 (Pa. 1981).

3

circumvent Maryland law, which provides no cause of action for insurer bad faith in first party property cases. *See Hartz v. Liberty Mut. Ins. Co.*, 269 F.3d 474, 476 (4th Cir. 2001) ("Maryland has made a considered decision not to recognize a tort action for bad faith failure to settle with an insured."); *Stephens v. Liberty Mut. Fire Ins. Co.*, 821 F. Supp. 1119, 1120 (D. Md. 1993) ("Maryland does not recognize a tort action against an insurer for bad faith failure to pay a first party insurance claim"). In place of a tort claim, Maryland offers an administrative process to deal with insurance complaints. *See Hartz*, 269 F.3d at 475-76.

     A federal court sitting in diversity applies the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Plaintiffs concede that under the Maryland choice of law rule governing contracts, *lex loci contractus*, the insurance policy is governed by Maryland law. They therefore acknowledge I should apply Maryland law to Counts One and Two. However, Plaintiffs argue that I should apply the Maryland choice of law rule governing torts, *lex loci delicti*, to Counts Three and Four, which would mandate that I apply the tort law of Pennsylvania and Indiana because the alleged wrongs occurred in those states. In other words, Plaintiffs argue that under Maryland choice of law principles I should import the tort law of states in which claim handling operations took place. I decline to do so in this circumstance.

     Plaintiffs cite no case, from any jurisdiction, in which a court chose to apply a particular state's tort law governing bad faith insurance claims because the claim handling operations took place in that state. To the contrary, when courts decide whether to apply Pennsylvania's insurer bad faith statute, they look to whether Pennsylvania law governs the insurance contract. In *Carosella & Ferry, P.C. v. TIG Insurance Co.*, 189 F. Supp. 2d 249 (E.D. Pa. 2001), a

Pennsylvania insured sued for breach of contract and for bad faith under § 8371. In choosing which state's law to apply to both the contract claim and the tort claim, the court looked only to the Pennsylvania choice of law provision governing contracts. *Id.* at 251-52. In *Eastern Stainless*, Judge Nickerson of this court applied the Maryland choice of law rule governing contracts, *lex loci contractus*, to determine that Pennsylvania law governed the insurance policy and therefore plaintiffs could proceed with a bad faith action under § 8371. *Eastern Stainless*, 829 F. Supp. at 799.

      Likewise, when courts decide whether to allow plaintiffs to proceed under Indiana's common law claim for insurer bad faith, they look to whether Indiana law governs the insurance contract. In *KNS Companies, Inc. v. Federal Insurance Co.*, 866 F. Supp. 1121 (N.D. Ill. 1994), the court faced the question whether to allow a plaintiff to proceed under an Indiana bad faith claim or whether to apply Illinois law, which had no claim for insurer bad faith. The court answered the question by applying the Illinois choice of law provision for contracts. *Id.* at 1124-25. *See also Equitable Life Ins. Soc'y of U.S. v. Swantko*, No. 97 C 8535, 1999 WL 258532, at *3 (N.D. Ill. Apr. 19, 1999) (court facing the same scenario applied Illinois choice of law provision for contracts). All of these courts applied the choice of law provision for contracts, not torts, in determining which law should apply to an insurer bad faith claim. None of them considered the location of the insurer's claim handling operations to be relevant – in fact, the location of claim handling operations was never even mentioned.

      In addition to the lack of precedent, Plaintiffs' choice of law theory runs counter to Maryland public policy. Plaintiffs are Maryland residents pursuing a claim for damage to a Maryland property under an insurance contract they admit is governed by Maryland law.

5

Maryland has consistently refused to permit tort claims based on bad faith conduct by insurers because "the duty which is owed to an insured for failure to settle a claim sounds in contract and not in tort." *Hartz*, 269 F.3d at 476. Given this considered choice, I am confident that Maryland would not choose to import tort claims from other states in a case such as this, particularly when those tort claims are not intended to protect Maryland residents.[3] *See Kilmer v. Conn. Indem. Co.*, 189 F. Supp. 2d 237, 246-47 (M.D. Pa. 2002) (the Pennsylvania legislature enacted § 8371 for the purpose of "protecting its own residents/insured from overreaching insurance companies").

In sum, this case calls for application of Maryland's choice of law rule governing contracts, which both sides agree results in the application of Maryland law. Plaintiffs may not proceed under the Pennsylvania and Indiana tort claims. Counts Three and Four are dismissed.

III.

As a general rule, "a contract cannot be enforced by or against a person who is not a party to it." *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 128 A. 280, 281 (Md. 1925). The five affiliates of Hartford are not parties to the insurance policy covering the warehouse. Plaintiffs are incorrect to suggest that the policy declarations "specifically identify" as insurers The Hartford Insurance Group and Hartford Insurance Company of the Midwest. *See* Pls.' Opp'n at 12. The former is mentioned as a parent company of Hartford and not as an

---

[3] Plaintiffs' choice of law theory leads to unreasonable results in other circumstances as well. Suppose Plaintiffs were Pennsylvania residents pursuing a claim for damage to a Pennsylvania property under an insurance contract governed by Pennsylvania law, and the claims handling operations took place in Maryland. Under Plaintiffs' choice of law theory, I would apply Maryland tort law and the Defendants would completely escape the reach of Pennsylvania's bad faith insurer statute merely because their claims operations were in Maryland.

insurer, and the latter is only mentioned as a provider of Plaintiffs' commercial auto, commercial general liability, and employee benefits liability insurance.  The sole insurer of the property at issue is Hartford, which is the only proper defendant in this case.[4]

Walterhoefer is also not a party to the contract.  Conceding that, Plaintiffs assert that they have included the company in the suit as a precaution because the Maryland Uniform Declaratory Judgments Act provides: "If declaratory relief is sought, a person who has or claims any interest which would be affected by the declaration, shall be made a party."  MD. CODE ANN., CTS. & JUD. PROC. § 3-405(a)(1).  Assuming that the Maryland Act continues to govern a case removed to federal court, Plaintiffs have failed to specify any interest that Walterhoefer has in the outcome of the claim for declaratory relief.  Plaintiffs do not allege that Walterhoefer was an assignee or was otherwise in privity with a party to the contract.  Plaintiffs even concede that Walterhoefer suffered no pecuniary loss as a result of the blizzard.  Thus, there is no basis for Walterhoefer to remain a plaintiff in this case.

A separate order is being entered herewith.


 June 26, 2006                          /s/
Date                                    J. Frederick Motz
                                        United States District Judge

---

[4] The three other affiliates may have handled claims operations in Pennsylvania and Indiana and were apparently named as defendants for purposes of Counts Three and Four, but these counts are now dismissed.