IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CECILIA SCHWABER TRUST TWO, *et al.* | * * | |
| Plaintiffs, | * * | Civil No. JFM-06-0956 |
| v. | * * | |
| HARTFORD ACCIDENT AND INDEMNITY, CO., *et al.* | * * | |
| Defendants. | * | |

*****

**MEMORANDUM**

Cecilia Schwaber Trust Two and Schwaber Management, Inc. ("plaintiff") filed this suit against Hartford Accident and Indemnity Company and related entities ("defendant") alleging breach of an insurance contract and failure to act in good faith in paying an insurance claim. (Compl. ¶¶ 15, 45.) Defendant now moves for summary judgment as to Count Five of plaintiff's first amended complaint, which asserts the claim for failure to act in good faith. For the reasons stated below, defendant's motion is denied.

**I. Facts**[1]

Defendant issued an insurance policy covering plaintiff's warehouse in Baltimore, Maryland, for the period of March 1, 2002 through March 1, 2003. During that time, plaintiff leased the property to H.C. Walterhoefer, Inc., with the option for the tenant to purchase the property for $1,550,000. In February 2003, a large snowstorm caused snow and ice to

---

[1]Because the background facts are set forth in my two earlier opinions, I recite here only the facts relevant to the pending motion. *See Cecilia Schwaber Trust Two v. Hartford Accident & Indem. Co.*, 437 F. Supp. 2d 485 (D. Md. 2006); *Cecilia Schwaber Trust Two v. Hartford Accident & Indem. Co.*, No. 06-0956, 2007 WL 4532126 (D. Md. Dec. 17, 2007) (unpublished).

1

accumulate on the roof of the warehouse.  In March 2003, the building began to show evidence of damage; in particular, the roof sprung a series of leaks.

After plaintiff hired several engineers and roofers to examine the cause and degree of the damage, plaintiff filed a claim with defendant.  Defendant initially denied the claim in full, stating that the damage was caused by water leakage over a prolonged period of time.  Defendant later amended this position, agreeing that approximately five percent of the loss was covered by the policy.  Defendant concluded that the remainder of the loss was attributable to causes excluded from coverage:  faulty workmanship, maintenance, and wear and tear.

In March 2005, plaintiff sold the property to H.C. Walterhoefer, Inc. for a discounted price reached by deducting the estimated cost of replacing the roof from the original option contract price.  This suit was filed in February 2006 in the Circuit Court for Baltimore City.  In April 2006, defendant removed the case to this court.

## II.  Procedural History

In the first of two opinions issued in this case, plaintiff's bad faith claims brought under Indiana and Pennsylvania law were dismissed because Maryland law governs the case.  *See Cecilia Schwaber Trust Two v. Hartford Accident & Indem. Co.*, 437 F. Supp. 2d 485, 489 (D. Md. 2006) ("*Schwaber I*").

The second opinion issued in this case granted in part and denied in part plaintiff's motion for summary judgment, denied defendant's cross-motion for partial summary judgment, and granted leave for plaintiff to amend its complaint to include a claim for lack of good faith under a new Maryland statute.  *See Cecilia Schwaber Trust Two v. Hartford Accident & Indem. Co.*, No. 06-0956, 2007 WL 4532126 (D. Md. Dec. 17, 2007) (unpublished) ("*Schwaber II*").  In

its summary judgment motion, plaintiff argued it was clear that two policy exclusions the insurer had claimed defeated coverage - the faulty workmanship exclusion and the wear and tear exclusion - did not apply.  I found that defendant had put forth sufficient evidence to raise genuine issues of material fact with respect to both the faulty workmanship exclusion and the wear and tear exclusion.  *See id.* at *4.  Accordingly, the cause of the damage to plaintiff's facility, and thus the applicability of the aforementioned exclusions, will be issues for the factfinder to resolve at trial.  However, plaintiff's summary judgment motion was granted as to the extent of potential damages, because I found that there was no genuine issue of material fact concerning the necessity of the total roof replacement.  *Id.* at *5.

Defendant cross-moved for partial summary judgment on the question of whether, assuming no policy exclusion applies, plaintiff is entitled to recover the amount of the roof replacement.  Defendant argued that because plaintiff sold the property at a discounted rate, rather than actually paying for the roof replacement, plaintiff was not entitled to recover replacement cost damages.  I denied defendant's motion, finding that under the contract, plaintiff needed not pay the contractor directly to recover damages.  *Id.* at *6.

At the time plaintiff filed suit, Maryland did not provide insureds with a first-party claim against insurers for failure to act in good faith.  However, the Maryland General Assembly passed a statute, effective October 1, 2007, creating such a claim.  *See* Md. Code Ann., Cts. & Jud. Proc. § 3-1701.  Therefore, in conjunction with its summary judgment motion, plaintiff filed a motion to reinstate its bad faith claim.  Defendant objected on the ground that retroactive application of the statute would violate defendant's state and federal constitutional rights.  Plaintiff's motion was treated as a motion for leave to amend, and plaintiff was allowed to file a

new complaint which included a claim for failure to act in good faith under the new Maryland statute. *Schwaber II*, 2007 WL 4532126 at *7. I deferred decision on defendant's constitutional arguments "until and unless it becomes clear that their resolution is necessary to the outcome of this litigation." *Id.*

Meanwhile, on September 28, 2007, while plaintiff's motion to reinstate its bad faith claim was pending, plaintiff moved to certify to the Maryland Court of Appeals questions concerning retroactive application of the new Maryland statute. Defendant objected, and I ruled in conjunction with the summary judgment motions that I needed not certify the questions to the Court of Appeals at that stage of the litigation. *Id.*

On January 21, 2008, plaintiff filed an amended complaint with a claim for failure to act in good faith. (*See* Am. Compl. ¶¶ 46-53.) On March 17, 2008, defendant filed a motion to dismiss that claim, arguing that the court's denial of plaintiff's summary judgment motion demonstrated, as a matter of law, that plaintiff had no viable claim under the statute. Defendant argued that the court need not reach the constitutional issues regarding the good faith statute because the claim could be resolved on the merits. On May 19, 2008, defendant's motion was denied "without prejudice to being renewed after the conclusion of discovery on the bad faith issue." (Letter Ruling, Dkt. No. 63.) I concluded that "because of the uncertainty of the question, . . . a further factual record needs to be established through discovery on the bad faith issue." (*Id.*)

Discovery having now been completed, defendant has renewed its March 2008 motion to dismiss the good faith claim as a motion for partial summary judgment. Defendant incorporates by reference the arguments it made in two previous filings: the merits arguments made in

4

defendant's March 2008 motion to dismiss ("Def.'s Mot. to Dismiss") and the constitutional arguments made in defendant's July 2007 supplemental response in opposition to plaintiff's motion to reinstate the bad faith claim ("Def.'s Supp'l Response").[2]

### III.  Defendant's Motion for Partial Summary Judgment

The Maryland good faith statute provides that a plaintiff can recover expenses and litigation costs, including reasonable attorneys' fees, as well as interest on those costs, in an action seeking "to determine coverage that exists under [an] insurance policy," if the plaintiff can show that "the insurer failed to act in good faith" with respect to the insurance claim.  Md. Code Ann., Ins. § 27-1001(e)(2)(ii); Md. Code Ann., Cts. & Jud. Proc. § 3-1701(d)(1)-(2).  The statute defines good faith as making "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim."[3]  Md. Code Ann., Cts. & Jud. Proc. § 3-1701(a)(4).  The only other

---

[2] In order to reach the federal constitutionality question raised by defendant, it is necessary for me to decide two issues of state law: proper analysis of a claim under the good faith statute and legislative intent regarding retroactivity of the statute.  I am reserving ruling as to the constitutionality of the good faith statute under the Maryland Constitution and Declaration of Rights.  Should the Maryland constitutionality question be certified at a later date, the certification order might also appropriately include the statutory interpretation question and the legislative intent question, despite my having ruled on them in this opinion.

[3] This definition of good faith is almost identical to the definition of the good faith owed by insurance companies to their insureds when faced with an opportunity to settle a claim by a third party within the limits of the insured's policy.  *See State Farm Mut. Auto. Ins. Co. v. White*, 236 A.2d 269, 273 (Md. 1967).  In *White*, the Maryland Court of Appeals held that "for an insurer to measure up to the good faith test, its action in refusing to settle must consist of an *informed judgment based on honesty and diligence*."  *Id.* (emphasis added).  The factors relevant to the analysis of good faith in that context include: "the severity of the plaintiff's injuries giving rise to the likelihood of a verdict greatly in excess of the policy limits; lack of proper and adequate investigation of the circumstances surrounding the accident; lack of skillful evaluation of plaintiff's disability; failure of the insurer to inform the insured of a compromise offer within

guidance as to the meaning of failure to act in good faith is provided in subsection (f) of the statute:

> An insurer may not be found to have failed to act in good faith under this section solely on the basis of delay in determining coverage or the extent of payment to which the insured is entitled if the insurer acted within the time period specified by statute or regulation for investigation of a claim by an insurer.

*Id.* § 3-1701(f).

**A.**

Defendant argues that the court's denial of plaintiff's motion for summary judgment on the issue of coverage warrants dismissal of plaintiff's good faith claim as a matter of law. (Mem. Supp. Def.'s Mot. to Dismiss 2.) According to defendant, if a "genuine dispute" existed that precluded granting summary judgment in plaintiff's favor, it follows that the question of coverage is "fairly debatable" and that the insurer has at least made "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." (*Id.* at 5-6.) Therefore, defendant asserts, the court can grant summary judgment on the good faith claim on the merits and need not reach the constitutional challenges to the statute.

Specifically, defendant argues that Maryland courts would adopt the "fairly debatable" standard to evaluate claims under the good faith statute. (*See id.* at 4-6.) This standard, as described by a leading case in Wisconsin, dictates that "where a claim was not fairly debatable,

---

or near the policy limits; pressure by the insurer on the insured to make a contribution towards a compromise settlement within the policy limits, as an inducement to settlement by the insurer; and actions which demonstrate a greater concern for the insurer's monetary interests than the financial risk attendant to the insured's predicament." *Id.* Many of these factors, of course, would not be relevant in the context of first-party insurance claims.

[an insurer's] refusal to pay would be bad faith . . . ." *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 374 (Wis. 1978).[4] When a claim is fairly debatable, however, "the insurer is entitled to debate it" and will not be subject to liability for acting in bad faith. *Id.* at 376. In order to "show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* The fairly debatable standard has been adopted by several other states. *See, e.g.*, *Bushey v. Allstate Ins. Co.*, 670 A.2d 807, 810 (Vt. 1995) ("Insurers may challenge claims that are fairly debatable."); *Pickett v. Lloyd's*, 621 A.2d 445, 453-54 (N.J. 1993) (adopting the fairly debatable standard); *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980) ("If a claim is 'fairly debatable,' no liability in tort will arise.").

Defendant relies on *Pickett v. Lloyd's*, a case in which the New Jersey Supreme Court held that bad faith claims must be dismissed before trial if summary judgment cannot be granted for plaintiff on the underlying claim: "Under the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim." *Pickett*, 621 A.2d at 454. Other courts have reached a similar conclusion. *See, e.g.*, *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 873 (5th Cir. 1991) (applying Mississippi law and

---

[4]In adopting the "fairly debatable" standard, the *Anderson* Court stated:
We are satisfied that the application of the ["fairly debatable" test], which recognizes the intentional nature of the tort of bad faith and puts the test upon an objective basis, will minimize the fears expressed by the defendant insurance company that to permit claims for bad faith will result in extortionate lawsuits. Such result cannot follow when an insurance company in the exercise of ordinary care makes an investigation of the facts and law and concludes on a reasonable basis that the claim is at least debatable.
*Id.* at 377.

7

noting that "unless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny an insurance claim exists in most instances" and will defeat a bad faith claim); *Bushey*, 670 A.2d at 810 ("When a court decides that an insurer's actions were reasonable because the claim was fairly debatable as a matter of law, it must grant the summary judgment motion [on the bad faith claim] without reaching the question of the insurer's knowledge."); *Calenda v. Allstate Ins. Co.*, 518 A.2d 624, 629 (R.I. 1986) ("Since the evidence [on the underlying insurance claim] gives rise to a valid question of coverage, it follows that Allstate could not have acted in bad faith.").

However, there is no indication that the Maryland General Assembly intended to narrowly construe the good faith statute in the manner defendant urges. The fairly debatable standard does not appear to comport with the language of the Maryland statute, which requires "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." Md. Code Ann., Cts. & Jud. Proc. § 3-1701(a)(4). This definition focuses on the actions taken by the insurer in forming a judgment as to coverage, as well as what the insurer knew or should have known at the time it denied coverage to its insured. In the cases cited above, the fairly debatable standard was created by courts simultaneously with the creation of a common law cause of action for bad faith; there was no controlling statute. In this case, however, the cause of action arises pursuant to a statute, and the court must follow the statutory language. Moreover, the action here is for failure to act in "good faith," as opposed to an action for "bad faith." Maryland courts have indicated that the two are not the same. *See State v. Booze*, 637 A.2d 1214, 1222 (Md. 1994) (noting that "not acting in bad faith is not the same as acting in good faith and/or with good

cause"); *Zdravkovich v. Bell Atlantic-Tricon Leasing, Corp.*, 592 A.2d 498, 503 (Md. 1991) ("The District Court's finding that Zdravkovich 'has not shown good faith' is not the equivalent of a finding of 'bad faith' . . . ."); *Art Form Interiors, Inc. v. Columbia Homes, Inc.*, 609 A.2d 370, 376 (Md. Ct. Spec. App. 1992) (noting that "a finding that a party has not shown good faith is not the functional equivalent of a finding of bad faith"). *But see Catterton v. Coale*, 579 A.2d 781, 783 (Md. Ct. Spec. App. 1990) ("To further illuminate the definition of 'good-faith,' we found it most instructive to compare the definition of 'bad-faith.' 'Bad-faith' is the opposite of good faith . . . .").

By way of comparison, the Florida first-party bad faith statute provides that an insurer has not acted in bad faith if the insurer has "'acted fairly and honestly toward its insured and with due regard for [the insured's] interest.'" *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 63 (Fla. 1995) (*quoting* Fla. Stat. § 624.155(1)(b)) (alteration in original). The Florida Supreme Court, in determining the standard by which these claims should be evaluated, rejected the "fairly debatable" standard because of the specific language provided in the Florida statute. *Id.* at 62. The court instead adopted a "totality of the circumstances" approach. *Id.* at 63. The court concluded that the following factors were pertinent in determining bad faith:

> [(1)] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [(2)] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [(3)] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*Id.*

I find the reasoning by the Florida court persuasive. Because there is a specific standard set forth in the Maryland statute, it would be inappropriate to apply the "fairly debatable"

9

standard. An evaluation of whether an insurer made an "informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time" of its coverage decision requires, for example, an evaluation of the insurer's efforts to obtain information related to the loss, accurately and honestly assess this information, and support its conclusion regarding coverage with evidence obtained or reasonably available. The fairly debatable standard should not be glossed onto the standard explicitly created by the Maryland legislature. Had the legislature wanted to adopt the "fairly debatable" standard used in other states for common law bad-faith actions, it could have.

My denial of plaintiff's summary judgment motion does not necessarily lead to the conclusion that the defendant made "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim," as required by the statute. Specifically, the summary judgment opinion did not address what defendant knew or should have known at the time of its assessment of plaintiff's claim. As plaintiff states, my previous opinion

> did not analyze, consider or even have available to it evidence as to the manner in which Hartford investigated this claim, the reasons for its decision to tender the payment that it made, the reasons for its delay in responding to the claim, its delay in its failure to inspect the property, its selective use of expert witnesses, its failure to interview crucial witnesses or its failure to handle the claim in accordance with industry standards.

(Pl.'s Opp'n Def.'s Mot. Partial Summ. J. as to Count V of First Am. Compl. ["Pl.'s Opp'n"] 7.) Instead, the opinion looked at evidence presented by the parties at that point in the litigation, addressing the duel between competing experts and the dispute as to whether the faulty

workmanship and wear and tear exclusions apply.[5] That Hartford could at that point present evidence sufficient to create a genuine dispute concerning the applicability of the policy exclusions is not dispositive of whether *at the time the insurer's decision was made* the judgment was informed, based on honesty and diligence, and supported by evidence that the insurer knew or should have known at the time of the decision.[6]

**B.**

The Maryland good faith statute took effect on October 1, 2007. Plaintiff argues that this new statute applies retroactively and can apply in this case, even though the events underlying this lawsuit occurred in 2003.

In determining whether a statute should apply retroactively, the Maryland Court of

---

[5]The relevant portion of the opinion states:

> On the summary judgment record defendant has presented sufficient evidence to meet [its] burden. It has come forward with expert testimony showing that the roof was initially constructed with inadequate thickness in its gypsum decking, as well as evidence concerning additional intervening stresses to the roof. Indeed, even plaintiff's expert admits that the gypsum decking was below industry standard. I recognize that plaintiff has presented contrary evidence, disputing the view that the substandard gypsum decking contributed to the loss and supporting the conclusion that the snowstorm alone caused the damage to the roof. However, plaintiff's evidence merely establishes a classic duel between competing experts, and judging the credibility of experts falls squarely within the province of the jury. Consequently, plaintiff's motion for summary judgment on the issue of the applicability of the policy exclusions is denied.

*Schwaber II*, 2007 WL 4532126, at *3-4 (internal citations and footnotes omitted).

[6]I note that the jury could not find that Hartford failed to act in good faith unless it finds that Hartford breached the insurance contract. Plaintiff does not argue otherwise. The statute provides that the remedies available (actual damages, attorneys' fees, and other costs) can be recovered only "if the trier of fact . . . finds in favor of the insured *and* finds that the insurer failed to act in good faith . . . ." *Id.* § 3-1701(e) (emphasis added).

Appeals established a framework containing the following four principles:

> (1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

*Allstate Ins. Co. v. Kim*, 829 A.2d 611, 618 (Md. 2003). These four principles require a "two-part analysis." *Id.* First, a court must decide "whether the Legislature intended the statute to have the kind of retroactive effect that is asserted." *Id.* If a court answers that inquiry in the affirmative, it must then determine whether the intended retroactive effect would "contravene some Constitutional right or prohibition." *Id.* at 619.

1. Retroactivity

I find that there is sufficient evidence in the statutory text and legislative history to rebut the presumption of prospective application and demonstrate that the legislature intended for the statute to apply retroactively.[7] The law states that "the provisions of this Act providing for administrative penalties and license sanctions that may be imposed by the Maryland Insurance Commissioner apply *only to an act or omission occurring on or after the effective date* of this Act." 2007 Md. Laws 150, § 2 (emphasis added). No similar restriction is included for the other remedies created by the statute. Therefore, it follows that the legislature may have intended the other remedies, including expenses and litigation costs, to be available for acts or omissions that occurred *before* the October 1, 2007 effective date. *See, e.g.*, *Kim*, 829 A.2d at 619 (noting that

---

[7] I note that defendant agrees that the legislature intended the statute to apply retroactively. (*See* Def.'s Opp'n Mot. Certify 1 ("Maryland's legislature apparently intended that Senate Bill 389 apply retroactively.").)

expression of retroactive intent "may be found by necessary implication").

This conclusion, "drawn as a necessary inference from the statutory language itself, is supported, as well, by the legislative history." *Id.* at 620. The Maryland Senate voted to reject an amendment that would have explicitly made the statute prospective only.[8] It is therefore clear to me that the legislature intended to give the statute retroactive effect.[9]

As noted above, the statute will not be given retroactive effect if doing so would violate the United States or Maryland constitutions. *See Kim*, 829 A.2d at 618-19. Here, the defendant alleges that allowing the statute to apply retroactively would impair vested rights and violate the Contract Clause of the United States Constitution, Article 24 of the Maryland Declaration of Rights, and Article III, Section 40 of the Maryland Constitution.

2. <u>Constitutionality under the Contract Clause of the U.S. Constitution</u>

The Contract Clause of the United States Constitution reads: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. Art. I, s. 10. A three-part

---

[8]The rejected amendment stated the "Act shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date of this Act." (Reply Mem. Supp. Pl.'s Mot. Summ. J. and Opp'n Hartford's Cross Mot. Summ. J. Ex. 71, SB0389/663720/1.)

[9]Plaintiff argues that the purpose of the statute, which was enacted in light of alleged insurance improprieties after Hurricanes Katrina and Isabel, supports the claim that it should be given retroactive application to compensate those affected by the hurricanes. I find sufficient evidence of legislative intent for the statute to operate retroactively without this additional argument. Moreover, it seems the Maryland Court of Appeals may not find this argument persuasive. *See State Ethics Comm'n v. Evans*, 855 A.2d 364, 372 (Md. 2004) ("The fact that Evans's conduct may have helped spawn the legislative action that led to the enactment of [the statute] does not mean that the Legislature intended for the [statute to operate retroactively]. It is not uncommon for a legislative body to address a problem, even a serious one, prospectively, understanding that the statute it enacts to deal with the problem may not immediately apply to those who caused the problem.").

13

analysis is conducted to determine whether a statute violates the Contract Clause. First, the court must determine whether there has been an impairment of a contract. *Catawba Indian Tribe of South Carolina v. City of Rock Hill*, 501 F.3d 368, 371 (4th Cir. 2007). Second, the court must determine whether the law substantially impairs the contractual relationship. *Id.* Third, "if the court finds a substantial impairment, it must ask 'whether that impairment is nonetheless permissible as a legitimate exercise of the state's sovereign powers.'" *Id.* (*quoting Baltimore Teachers Union v. Mayor and City Council of Baltimore*, 6 F.3d 1012, 1015 (4th Cir. 1993)). "In short, then, a claimant must show (1) contractual impairment, (2) that is substantial, and (3) not a legitimate exercise of state power." *Id.*

Defendant's claim under the Contract Clause is that retroactive application of the good faith Maryland statute improperly impairs the existing insurance contract between defendant and plaintiff. Specifically, defendant argues that the statute "superimposes a vague and untested duty on the written terms of the contract that simply did not exist at the time the insurance contract went into effect." (Def.'s Supp'l Response 10.) Defendant asserts that while it intended to honor its contractual obligations consistent with Maryland law as it existed at the time of contract, it had "no advance opportunity to evaluate the implications of this new duty . . . [and] no opportunity to adopt practices that would minimize the risk of running afoul of the new standard." (*Id.*) Defendant claims that it faces "increased costs associated with adjusting, defending and paying claims in this new legal environment." (*Id.*)

The only section of the insurance contract between plaintiff and defendant discussing legal action states: "No one may bring a legal action against us under this Coverage Part unless: 1) There has been full compliance with all of the terms of this Coverage Part; and 2) The action

is brought within 3 years after the date on which the direct physical loss or damage occurred." (Compl. Ex. 1, "Maryland Changes," Form PC 31 19 06 99.) Recovery of interest and litigation costs are not mentioned in the contract.

The good faith statute allows a plaintiff to seek expenses and litigation costs, including reasonable attorneys' fees, as well as interest on those costs. As a result, the potential costs of litigation from breaches of contract are higher. However, I do not believe this is an impairment of the contract. The substantive rights and obligations of the parties were not altered by the statute.[10]

The new Maryland statute is more remedial in nature; it will operate only if a court or jury first finds that the insurer breached the insurance contract. The Supreme Court has stated:

> The parties may rely on the continued existence of adequate statutory remedies for enforcing their agreement, but they are unlikely to expect that state law will remain entirely static. Thus, a reasonable modification of statutes governing contract remedies is much less likely to upset expectations than a law adjusting the express terms of an agreement.

*United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 19 n.17 (1977) (also noting that "[i]mpairment of a remedy was held to be unconstitutional if it effectively reduced the value of substantive contract rights"). It is true that if a statute changes the legal enforceability of a contract, the contract is impaired. *See General Motors Corp. v. Romein*, 503 U.S. 181, 189

---

[10]*See, e.g.*, *Port East Transfer Inc. v. Liberty Mut. Ins. Co.*, 624 A.2d 520, 524 (Md. 1993) ("Even when the parties are silent on the issue, the law will impose an implied promise of good faith [on insurance contracts]."); *Shawnee Fire Ins. Co. of Topeka, Kan. v. Pontfield*, 72 A. 835, 836 (Md. 1909) ("It is the duty of both parties to a contract of insurance . . . to act in good faith . . . ."); *Schaefer v. Baltimore Marine Ins. Co.*, 33 Md. 109, 1870 WL 3972, *5 (1870) ("The contract of insurance requires the purest good faith and fairness on both sides."); *Allegre v. Maryland Ins. Co.*, 6 H. & J. 408, 1825 WL 508, *6 (Md. 1825) ("Good faith and fair dealing is of the very essence of all contracts of insurance, and should pervade every proceeding under them.").

(1992) (finding that "changes in the laws that make a contract legally enforceable may trigger Contract Clause scrutiny if they impair the obligation of pre-existing contracts, even if they do not alter any of the contracts' bargained-for terms"). Here, however, the contract remains legally enforceable, and the bargained-for terms are unchanged. As another court has stated, "[i]n effectuating its remedial purpose [the new statute] has a collateral effect on the insurance company's obligation, but its aim and intent is not to impair the contractual relationship. In fact, its aim is to require the insurance company to honor its contractual obligation . . . ." *Armacost v. Amica Mut. Ins. Co.*, 821 F. Supp. 75, 82 (D.R.I. 1993).

Even if an impairment could be shown, it would not rise to the level of a "substantial" impairment. Defendant presents no evidence regarding the degree of "economic impact" the law will have on insurers. *Kim*, 829 A.2d at 625. Additionally, insurance companies are the subject of extensive regulation in Maryland, a factor the Supreme Court has found relevant in determining whether an impairment is substantial. *See Energy Reserves Group, Inc., v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983) ("In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past."); *Kim*, 829 A.2d at 625 (noting that "the contract at issue is an insurance policy which, like the industry as a whole, is subject to extensive regulation by the State").

In other words, it may well be that the new law does not substantially impair the contract at issue in this case. However, even assuming a substantial impairment, the new law is permissible as a legitimate exercise of the state's police power. Because the contract is a private one, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *United States Trust Co.*, 431 U.S. at 22-23. I do so here. Given the

legislature's apparent concerns about insurance litigation and consumer protection in Maryland, I cannot say it was unreasonable for the Maryland legislature to adopt this law as necessary and reasonable to address the issue.[11]

### 3. Constitutionality under the Maryland Declaration of Rights and Constitution

Defendant challenges the constitutionality of the good faith statute under Article 24 of the Maryland Declaration of Rights, the state counterpart to the Fourteenth Amendment due process clause, and Article III, Section 40 of the Maryland Constitution, the state counterpart to the Fifth Amendment "takings" clause. The test under both provisions "is whether retroactive effect would impair vested rights." *Kim*, 829 A.2d at 621.

Plaintiff requests that the court reach the issue of the statute's constitutionality under Maryland law, or certify the issue to the Maryland Court of Appeals, only in the event that a jury finds in plaintiff's favor on the good faith claim. (Pl.'s Opp'n 3, 22.) In the alternative, plaintiff requests that their motion to certify dated September 28, 2007, be renewed and granted if the court finds that a determination as to the constitutionality of the statute needs to be made at this time. (*Id.*)

The Court of Appeals will answer a certified question of law "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute." Md. Code Ann., Cts. & Jud. Proc. § 12-603. The decision to certify a question to the Court of Appeals "rests in the sound discretion

---

[11]Contrary to defendant's assertions, the new law need not be addressing an emergency or temporary situation to survive a Contract Clause challenge. *See, e.g.*, *Energy Reserves Group*, 459 U.S. at 412.

17

of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

I am reserving ruling on the constitutionality of the statute under Maryland law, and out of respect for the Court of Appeals, I decline to certify these questions at this time. Should it become necessary after the trial on the merits to determine the constitutionality of the statute under Maryland law, I may certify the questions at that point.[12]

For the foregoing reasons, defendant's motion for partial summary judgment is denied. A separate order implementing this ruling follows.


July 14, 2009                    /s/
                                 J. Frederick Motz
                                 United States District Judge

---

[12] It may also be that if the issues are to be certified after a trial on the merits, the certification should be ordered by the Fourth Circuit on appeal by defendant. This leaves open the possibility that if the Fourth Circuit disagrees with my determination that the Maryland statute is valid under the Contract Clause, the state law constitutional arguments need not be reached.